IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

RANDALL HASLEY, SR. AND JUDITH          *
HASLEY, on behalf of themselves and
all others similarly situated,          *

      Plaintiff,                     *        Civil Action No. RDB-13-1607

          v.                 *

WARD MANUFACTURING, LLC,                *

      Defendant.                     *

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM OPINION

This class-action claim arises out of the presence of allegedly dangerous "Wardflex®" piping in residential and commercial structures in the State of Maryland. The Plaintiffs, Randall Halsey, Sr. and Judith Halsey, on behalf of themselves and the class,[1] ("Plaintiffs") filed a three-count Class Action Complaint[2] (ECF No. 7) against Ward Manufacturing, LLC ("Defendant" or "Ward Manufacturing") asserting strict liability pursuant to § 402A of the Restatement (Second) of Torts (Count I), negligence for design defect (Count II), and negligence for failure to warn (Count III). Defendant filed a Motion to Dismiss (ECF No. 15), which is now fully briefed. Both parties also filed supplemental material (ECF Nos. 19, 20, and 21). The parties' submissions have been reviewed and no hearing is necessary. *See*

---

[1] Plaintiffs define the class as "all persons or entities in the State of Maryland who purchased a house or other structure in which Ward Manufacturing's Wardflex® is installed after September 5, 2006, or who after, September 5, 2006, purchased a house, or other structure, in which Ward Manufacturing's Wardflex® was installed prior to September 5, 2006." First Am. Class Action Compl. ¶ 63.

[2] The Complaint was subsequently amended by the filing of the First Amended Complaint.

Local Rule 105.6 (D. Md. 2011).  For the reasons that follow, the Defendant's Motion to

Dismiss is GRANTED.

## BACKGROUND

This Court accepts as true the facts alleged in Plaintiffs' First Amended Complaint.

*See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  Wardflex® is a type of ultrathin,

flexible piping (corrugated stainless steel tubing (CSST)) used to transport natural gas and

was developed as an alternative to black iron pipe.  First Am. Class Action Compl. ¶ 2.  The

First Amended Complaint contends that the presence of Wardflex® is highly dangerous

because its walls are thin and "susceptible to perforation by an electrical arc generated by a

lightning strike, which can cause and has caused fires, damage to and destruction of

residential structures, and creates a substantial and unreasonable risk of death or personal

injury."[3]  *Id.* ¶ 5.  While CSST has now been installed in over five million homes, only 141

fires are alleged to have occurred due to problems associated with CSST.  *Id.* ¶¶ 29 and 40.

The named Plaintiffs allege that Wardflex® was installed in their home in 2008.  *Id.* ¶ 9.

Due to this alleged risk, Plaintiffs assert that Wardflex® is defective and that it must be

removed from structures and replaced.  *Id.* ¶ 10.

Plaintiffs further allege that Ward Manufacturing knowingly placed this defective

product in homes and failed to warn Plaintiffs and others about this defect.  *Id.* ¶¶ 48-49.

Finally, the First Amended Complaint contends that Defendant failed to perform adequate

---

[3] Despite the alleged risks, the Complaint also recognizes that CSST has many advantages.  First Am. Class Action
Compl. ¶ 26-28.

safety tests on Wardflex®. *Id.* ¶ 55. Based on these assertions, Plaintiffs claim they have suffered damages.

STANDARD OF REVIEW

## I. Rule 12(b)(1)

When a defendant moves to dismiss a plaintiff's claim for lack of standing, courts commonly address the motion under Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Payne v. Chapel Hill North Properties, LLC*, 947 F. Supp. 2d 567 (M.D.N.C. 2013). A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction challenges a court's authority to hear the matter brought by a complaint. *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). This challenge under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted). With respect to a facial challenge, a court will grant a motion to dismiss for lack of subject matter jurisdiction "where a claim fails to allege facts upon which the court may base jurisdiction." *Davis*, 367 F. Supp. 2d at 799. When addressing such a facial challenge, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). Where the challenge is factual, the district court may look beyond the pleadings and "decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see also Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003).

3

In this case, Defendant challenges Plaintiffs' standing in a Motion to Dismiss pursuant to Rule 12(b)(1).  However, Defendant has not challenged the veracity of Plaintiffs' allegations with respect to standing, but instead argues only that his allegations are inadequate to establish the jurisdiction of this Court.  As such, Defendant's Motion raises a facial challenge, and this Court will determine whether the allegations in the Complaint, when taken as true, are sufficient to establish standing under the plausibility standard of Rule 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Zander v. U.S.*, 786 F. Supp. 2d 880, 883 (D. Md. 2011) (applying *Iqbal/Twombly* standard to motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1)); see also *Kerns*, 585 F.3d at 192.

## II. Rule 12(b)(6)

Where, as here,  a party makes a facial challenge to the district court's jurisdiction pursuant to Rule 12(b)(1), the district court evaluates the jurisdictional allegations under the standard set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Rule 12(b)(6) authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Supreme Court's recent opinions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required."  *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  The Supreme Court's decision in *Twombly*

4

articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss. *Iqbal*, 556 U.S. at 678. First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.* Second, a complaint must be dismissed if it does not allege "a plausible claim for relief." *Id.* at 679. Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; see also *Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012).

<u>ANALYSIS</u>

Ward Manufacturing asserts several arguments in support of its Motion to Dismiss. *See* Def. Mot. Dismiss 2, ECF No. 15. Ward Manufacturing first contends that the Plaintiffs lack standing to bring this claim, which would leave this Court without jurisdiction to hear the action. *Id.* In the alternative, Ward Manufacturing argues that Plaintiffs fail to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) because Maryland's economic loss rule bars their claim.[4] *Id.*

---

[4] Ward Manufacturing also argues: (1) Plaintiffs fail to plead the required elements of a claim for strict liability; (2) Plaintiffs have not alleged facts necessary to support a claim for negligent design defect; and (3) Plaintiffs have failed to plead a claim for failure to warn. Because this Court finds that Plaintiffs do not have standing and Maryland's economic loss rule bars this action, this Court need not address the other arguments in the Motion to Dismiss. *See Richardson v. Mayor and City Council of Baltimore*, No. 13-RDB-1924, 2014 WL 60211 (D. Md. Jan. 7, 2011).

## I. Standing

"Article III of the Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies.'" *Clapper v. Amnesty Int'l.*, 133 S.Ct. 1138, 1146 (2013).  In order for plaintiffs to meet the case-or-controversy requirement they "must establish that they have standing to sue." *Id.* (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  The party invoking standing must establish the following three elements to meet the constitutional minimum of standing: (1) an injury-in-fact; (2) causation; and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Ward Manufacturing's main argument is that Plaintiffs fail to establish an injury-in-fact.  For the purpose of standing, an injury-in-fact must be "concrete, particularized, and actual or imminent." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).[5]   The United States Court of Appeals for the Fourth Circuit has made clear that a threat of injury is only enough to establish injury-in-fact if the injury is "certainly impending."  *Id.*  On the other hand,  "allegations of *possible* future injury" are not enough to constitute injury-in-fact. *Clapper*, 133 S. Ct. at 1147 (emphasis in original).

Plaintiffs maintain that their alleged threatened injury satisfies the injury-in-fact requirement, citing Fourth Circuit authority to support such a contention.  However, the facts of the cited cases are wholly distinguishable from the case at hand.  In *S.C. Wildlife Federation v. Limehouse*, 549 F.3d 324, 329 (4th Cir. 2010), the threat of harm from the construction of a bridge was enough to satisfy the injury-in-fact standard because it was alleged that the construction of the bridge would harm the members of the environmental

---

[5] Plaintiffs have not alleged any actual injury, but only a threat of injury based on the presence of Wardflex® in their homes.

group and their ability to use and enjoy the relevant area for a variety of recreational purposes. Thus, the threat of harm was considered imminent and certain. *Id.* In *Friends of the Earth, Inc. v. Gaston Copper Recycling Corporation*, 204 F.3d 149, 160 (4th Cir. 2000), the threat of harm was enough to satisfy the injury-in-fact element because the defendant was discharging pollutants upstream from plaintiff's property, which adversely impacted plaintiff's use of his lake. This created cognizable harm. *Id.*

In this case, however, the threat of harm is not imminent, and the harm is not cognizable. Plaintiffs set forth an extensive chain of unlikely events before establishing any potential injury. First Am. Class Action Compl. ¶¶ 30, 32. In order for Plaintiffs' alleged injury to occur, lightening must first strike near the Plaintiffs' property and it must cause a small puncture in the tubing wall of the Wardflex® installed in their homes. *Id.* ¶ *30.* Then this puncture must ignite the natural gas inside the tubing, and then the surrounding materials must ignite and create an extensive fire. *Id.* ¶ 32. Only then would Plaintiffs' alleged threatened injury arise. *Id.* In fact, Plaintiffs disclose the unlikeliness of this chain of events by revealing that only 141 fires have been reported from lightning strikes on any CSST piping (not specifically Wardflex®), while admitting that over five million homes contain Wardflex®. *Id.* ¶¶ 29, 40. Furthermore, Plaintiffs contend that thousands of homes in Maryland contain Wardflex®, but fail to explain whether any home in Maryland has experienced a fire due to the installation of Wardflex®. *Id.* ¶ 13. This threat of injury is far too speculative to reach the threshold of imminence. Accordingly, even when all inferences are drawn in favor of Plaintiffs, they have failed to make factual allegations demonstrating an injury-in-fact, and as such, they have no standing under Article III to pursue this action.

## II. Economic Loss Rule

In addition to its assertions about standing, Ward Manufacturing asserts the alternative argument that this Court should not permit Plaintiff's claims based on Maryland's economic loss rule. The Court of Appeals of Maryland has delineated three possible types of losses related to products liability: "(1) personal injuries, (2) physical harm to tangible things, and (3) intangible economic loss resulting from the inferior quality or unfitness of the product to serve adequately the purpose for which it was purchased." *A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 634 A.2d 1330, 1332 (Md. 1994). A plaintiff alleging only the third type, economic loss, is generally barred from bringing their claim under a products liability or any other type of tort theory.[6] *See Nat'l Labor College, Inc. v. Hillier Group Architecture N.J., Inc.*, 739 F. Supp. 2d 821, 832 (D. Md 2010) ("Under the economic loss rule, courts generally will not permit negligence claims that allege only economic loss."). In this case, Plaintiffs have asserted that the product, Wardflex®, is defective, Compl. ¶ 10, and that they will have to pay to absorb the cost of replacing or repairing the product, *id.* ¶ 38. Plaintiffs have not alleged any damage to their persons or property. As these allegations assert solely economic loss, the claims are barred by Maryland law. *See A.J. Decoster Co.*, 634 A.2d at 1332. (Pure economic losses are not recoverable under tort law).

Plaintiffs argue this Court should nevertheless permit their claims to proceed based on the public safety exception to the economic loss rule. Maryland courts apply a two-part test to determine if the public safety exception is applicable. *See Morris v. Osmose Wood*

---

[6] Plaintiffs make a vague assertion that the economic loss rule is only applicable to claims that assert damage to the product itself, but this argument is improper. *See Llyod v. General Motors Corp.*, 916 A.2d 257, 265 (Md. 2007) (determining economic loss as "the *loss of value* or *use of product*" and the "cost to repair or replace the product" (emphasis added) (citations omitted)); *A.J. Decoster Co.*, 634 A.2d at 1332 (economic loss results from "the inferior quality or unfitness of the product to serve adequately the purpose for which it was purchased").

*Preserving*, 667, A.2d 624, 631-32 (Md. 1995). A court must examine "the nature of the damage threatened and the probability of damage occurring to determine whether the two, viewed together, exhibit a clear, serious, and unreasonable risk of death or personal injury." *Id.* The "mere possibility[y]" of injuries is not "legally sufficient" to sustain an action in tort, and the doctrine creates a limited exception meant to apply only in extraordinary circumstances. *See id.*

In the present case, the probability of damage occurring is extremely remote. As the Plaintiffs have admitted in their First Amended Complaint, only 141 fires have been catalogued out of over five million homes containing Wardflex®. In the face of a small probability of damages, Plaintiffs must allege a "*substantial risk* of death or serious physical injury" in order for the public safety exception to apply. *Id.* (emphasis added). Plaintiffs attempt to compare their case to *Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co*, but that case is distinguishable. 517 A.2d 336 (Md. 1986). The defendant in *Whiting-Turner* created a substantial risk of death to multiple residents in a twenty-one story residential building it had constructed because it did not adhere to fire codes. *Id.* at 338-39. In the instant case, Defendant's product has been approved by numerous codes and standards, Compl. ¶ 21-22, 33, and any risk of fire is predicated upon the occurrence of unlikely events.[7] Plaintiffs have not pled facts upon which this Court can reasonably infer that the presence of Wardflex® creates a *substantial risk* of death or serious physical injury. As such, the public safety exception is inapplicable.

---

[7] Notably, in *Whiting-Turner*, any fire—irrespective of the cause—could have given rise to the threatened harm; whereas here, the risk only arises from a lightening strike in a specific location.

9

<u>CONCLUSION</u>

For the reasons stated above, Defendant, Ward Manufacturing, LLC's Motion to

Dismiss (ECF No. 15) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

A separate Order follows.


Dated:        July 8, 2014                          _____/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge